McGhee *v.* Grady.

12L 89
4pi 671

## G. T. McGHEE *v.* J. H. GRADY.

1. PLEADINGS AND PRACTICE. *Writ of certiorari. Need not state first application. When.* The writ of *certiorari* is the proper remedy to bring into the circuit court the papers in a cause tried by a justice of the peace, where the appeal was prayed and obtained in time, and the appeal perfected by executing a bond or taking the pauper oath as required by law, and the petition for the writ may be filed at any stage of the cause, and need not state that it is the first application for a *certiorari.*

2. SAME. *Same. Diminution. Appeal.* A petition which states in substance that an appeal from a justice's judgment had been prayed and granted and perfected within the time prescribed by law, that the justice had promised to bring up the papers but afterwards refused so to do unless required by the circuit judge, and asks for a *certiorari* to remove the cause into the circuit court for trial, is a petition for a *certiorari* upon a suggestion of diminution, and not in lieu of an appeal.

3. SAME. *Unlawful detainer. Title papers may be introduced. When.* Where an action of unlawful detainer is brought by a vendee of land against a person who had been in actual possession of a part of the land for eight years before the vendee bought, and is based upon an alleged subsequent renting by the defendant of the vendee, the proof being conflicting, it is not error to allow the defendant to introduce in evidence his title paper from the vendor to show the character of his holding, upon a proper charge to the jury that they could not enquire into the title, but only into the possession; and in the absence of·the charge it will be presumed that a proper charge was given.

4. SUPREME COURT PRACTICE. *Charge must be in bill of exceptions.* The court cannot notice what purports to be a part of the judge's charge to the jury which is merely copied into the transcript, but is not made a part of the bill of exceptions, nor shown to be entered on the minutes of the court.

FROM MONROE.

Appeal in error from the Circuit Court of Monroe county.    S. A. RODGERS, J.

S. E. YOUNG, MCCROSKEY & HICKS for McGhee.

R. PRICHARD, W. L. WELKER, W. B. STEPHENS and R. R. ROBINSON for Grady.

COOPER, J., delivered the opinion of the court.

McGhee brought an action of unlawful detainer against Grady, which was tried and judgment rendered in favor of the plaintiff by .the justice on January 9, 1880.    On

McGhee *v.* Grady.

January 12th, which was the succeeding Monday, Grady prayed and obtained an appeal to the circuit court, taking the oath prescribed for poor persons, which the justice marked "approved," and filed on the same day. This was the first day of the term of the circuit court, and the appeal was to the "next circuit court thereafter": Code, sec. 3140. The papers were not filed either during the January or the succeeding May term. About September 7, 1880, Grady presented to the judge of the circuit court a petition for a *certiorari* to "remove the cause to the circuit court for trial." He states in his petition that upon his taking the pauper oath, the justice promised to bring up the papers at or before the May term, but afterwards, about that term, refused to bring them up, "saying that he would not allow them to be brought up on appeal" until required by the judge of the court, and this although the petitioner had been evicted from the possession of the premises in controversy. He then undertakes to explain his subsequent delay by reason of sickness, and denies that he held the land under the plaintiff, but claims that he held for himself under a deed from the common vendor of both parties.

The papers having been brought up and filed under the *certiorari* awarded, the plaintiff moved to dismiss the petition because it did not show that it was the first application for a *certiorari*, and because the writ was not obtained within the time required by law. Other causes were assigned for the motion not now insisted on. The motion was overruled by the circuit court, the cause tried by a jury, and verdict and judg-

ment rendered in favor of the defendant Grady. The plaintiff appealed in error.

The Referees have reported that the judgment should be reversed, and the petition for the *certiorari* dismissed upon the first ground assumed in the motion, that the petition did not show that it was the first application for the writ. They so report because, they say, they construe the petition, "from the character of the facts stated therein and the circumstances surrounding the case," as a substitute for an appeal, and the statute expressly requires such a petition to state that it is the first application for the writ: Code, sec. 3128.

The prayer of the petition certainly admits of this construction, and the application, which seems to have been to the judge out of court, and the *fiat* granted are in the usual form and mode adopted in such cases. But the substance of the petition is that an appeal was prayed and granted, and perfected by the taking and filing of the oath prescribed in lieu of a prosecuting bond, and that the justice, although he had promised to bring up the papers, had failed and refused so to do unless required by the circuit judge. The appeal was in fact, perfected, and the right to have the papers filed in court was clear: *Lynn v. Tellico Manufacturing Company,* 8 Lea, 29. The writ of *certiorari* is the proper writ to compel a clerk, and for this purpose a justice is his own clerk, to file the record in an appellate court, when the law makes it the duty of that official to see that it is filed: Code, secs. 3124, 3142; *Pierce* v. *Pierce,* 4 Sneed, 77, 81. The appellate court may issue any writ or process

necessary for the exercise or enforcement of its juris-
diction: *King* v. *Hampton*, 5 Hayw., 59. And the
*certiorari* is the remedy, upon the suggestion of dim-
inution, to compel the production of the record by a
delinquent official: *Telegraph Company* v. *Ordway*, 8
Lea, 561; *Hamilton* v. *Hodgkiss*, 1 Tenn., 109. And at
any stage of the cause: *Trott* v. *West*, Meigs, 167. A
petition or affidavit for the writ in such a case is not,
therefore, restricted to any time, nor required to state
that it is the first application, the Code, section 3128,
applying only to "the petition" mentioned in the next
preceding sections, that is the petition for a *certiorari*
as a substitute for an appeal. Whether the plaintiff
might not have moved the court for judgment for the
failure to file the papers under the Code, section 3143,
*et seq.*, is a question not raised by the record. No
motion for the purpose having been made before the
papers were filed, it would perhaps have come too
late if it had been afterwards made, as was held in
a recent case at Jackson.

The plaintiff below proved that he bought from J.
P. T. McCroskey a large tract of land, and held it
under a deed from him with full covenants of war-
ranty. The boundaries of the tract include the land
in dispute—consisting of four acres—cleared and en-
closed, on which was a double log house, stable, well
and well house, fruit trees, grape vines, etc. He knew
at the time he bought from McCroskey that the de-
fendant lived on the four acres. The plaintiff testified,
and introduced evidence tending to show that after his
purchase, he went to the defendant's house, and the

defendant agreed to pay him rent in the way of a third of the fruit raised. The defendant denied that he made the agreement to rent as claimed, and insisted that he had only said that he would give the plaintiff some of the grapes and fruit, if he would come to his house for them, as he had given to his vendor, McCroskey. The verdict of the jury is conclusive that the proof of renting was very slight and unsatisfactory. There was evidence that the defendant had cleared and improved the four acres, originally wild land of little value, and had lived upon it about eight years.

Under these circumstances, the defendant introduced a witness who proved that he was the attesting witness to a written agreement between J. P. T. McCroskey and the defendant Grady, which he saw them sign or acknowledge. This instrument was then read to the jury, over the objection of the plaintiff, on the ground that the title to the land could not be enquired into in an action of forcible entry and detainer. The contract was that Grady was to clear and improve the land as the other testimony showed had been done, in consideration whereof McCroskey agreed that Grady should hold said house and lot during the natural life of both the parties, the possession to terminate at the death of either party. The admission of the instrument as evidence over the objection of the plaintiff is now assigned as error.

It is provided by statute that in actions of forcible or unlawful entry or detainer, "the estate or merits of the title shall not be enquired into": Code, sec.

McGhee *v.* Grady.

3354.　The importance of an adherence to this pro-
vision of the statute in a case of unlawful or forcible
entry is strongly dwelt upon, as a matter of public
policy for the peace of society, by Judge Turley in
*Davidson* v. *Phillips,* 9 Yer., 93.　It is obvious, how-
ever, that the reason for this strictness can have little
application to an action simply of unlawful detainer
where the defendant is and has long been in peace-
able possession.　In such cases, the defendant, if he has
been induced to take a lease under the plaintiff by
fraud, may introduce his title papers to be looked to
in the determination of the question whether the case
constitutes in law a wrongful entry or detainer: *Phil-
ips* v. *Sampson,* 2 Head, 430; *Allison* v. *Casey,* 4
Baxt., 587.　"It is admissible in this action," says
Judge McKinney, in the first of these cases, "to look
to the title for some purposes, as to define boundaries,
or in view of the question of rents and damages to
be recovered in an action brought by a mere intruder
against the rightful owner of the land."　So, in a
case in which the objection was made to the admission
of certain title papers in evidence, Totten, J., says:
"This is not objectionable when we consider that his
Honor, the judge, stated distinctly to the jury, in giving
his charge to them, that they could not enquire into
the title, but only into the possession, and that the
title papers had been permitted to be read to them
only to show the character of the holding of the
parties": *Settle* v. *Settle,* 10 Hum., 504.　In the case
before us, where the plaintiff had proved that he held
the land by deed from McCroskey, and sought to oust

the defendant from a continued possession of nine years upon unsatisfactory evidence of a renting from him by the defendant, it was important to the defense to read his title paper from McCroskey to show the character of his holding. In the conflict of testimony touching the renting, the weight which the jury might give to the plaintiff's testimony would depend greatly upon whether the defendant was a trespasser, an ordinary tenant under McCroskey from year to year for a stated rent, or an occupant under a claim of right for a consideration already paid. The admission of his title paper was not objectionable under the circumstances, provided the trial judge gave the jury the proper instruction on the subject. And, in the absence of the charge, the presumption is that he did instruct the jury correctly.

The bill of exceptions contains no charge of the judge. There is copied into the transcript immediately before the bill of exceptions a single sentence commencing thus: "Among other things not excepted to, the court charged the jury in this cause, that," etc. Error is assigned on this clause. But not being embodied in the bill of exceptions, it cannot be noticed: *Bass* v. *State*, 6 Baxt., 580; *Hardwick* v. *State*, 6 Lea, 229.

The report of the Referees will be set aside, and the judgment of the circuit court affirmed.