PATTERSON *et al. v.* TOWN OF TRACY CITY *et al.*

(*Nashville,* December Term, 1945.)

Opinion filed January 5, 1946.

FRANK HICKERSON, of Winchester, for appellants, complainants below.

GEORGE S. BUCKNER, of Murfreesboro, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Citizen residents of the Town of Tracy City challenge the validity of two companion ordinances which (1) pro-

hibit the running at large unattended of live stock within the corporate limits, and (2) provide for the impounding of such live stock. The chancellor sustained a demurrer and dismissed the bill and complainants below appealed.

The charge of invalidity is upon two alleged grounds, (1) that the ordinances are indefinite and unreasonable, and (2) that the act incorporating the town is unconstitutional and void. We consider first the attack upon the act, being Chapter 158 of the Private Acts of 1945, which is alleged to be void because violative of the provision in Section 17, Article II, of the Constitution that, "No bill shall become a law, which embraces more than one subject; that subject to be expressed in the title"; that the body of this act is broader than the caption. The title of the Act reads:

"An Act to incorporate the Town of Tracy City, in the County of Grundy, and State of Tennessee, and to provide for the election of officers thereof, and prescribe their duties; to define the corporate limits and prescribe the powers and duties of said Municipal Corporation; to provide for the raising of the revenue for the support of said incorporated Town and for other purposes."

The particulars in which it is charged that the body of the act is broader than the caption, are thus specified on the brief of appellant:

"1. Because the body appoints and elects the Mayor and Aldermen from the enactment until the first Monday in February, 1946 and until their successors are elected and qualified and provides that the said board of Mayor and Aldermen so appointed or elected may fill any vacancy occurring.

"2. Because by Section 18 of the Act it undertakes to prescribe qualifications for its officers and officials elected by the Town Council.

"3. Because in Section 3 of the body of the Act qualifications are prescribed for the candidates for the offices of Mayor and Aldermen."

██ Perhaps no provision of our Constitution has been more prolific of discussion in our reported cases, each case dependent for its decision upon its particular facts. Certain governing principles have been declared again and again. These are clearly restated by Mr. Justice Cook in *Hunter* v. *Conner,* 152 Tenn. 258, 268, 269, 277 S. W. 71, 73. After noting that the general purpose of this provision of the Constitution was "to give notice of the nature of the proposed legislation and prevent surprise and fraud in the enactment of laws," citing *Memphis Street Railway Co.* v. *Byrne,* 119 Tenn. 278, 104 S. W. 460, the opinion proceeds:

"To meet this constitutional requirement it is not necessary for the title to index the details of the act or give a synopsis of it. *Memphis Street Railway Co.* v. *Byrne,* 119 Tenn. 278, 104 S. W. 460. It is sufficient to direct the mind to the object of the proposed legislation (*Truss* v. *State,* 13 Lea [311], 312) ; the general purpose being accomplished, if the caption states the object of the legislation so that the legislative intent may be gathered from the words used (*Van Dyke* v. *Thompson,* 136 Tenn. 136, 189 S. W. 62; *Ryan* v. [*Louisville & N.*] *Terminal Co.,* 102 Tenn. [111], 126, 50 S. W. 744, 45 L. R. A. 303.) The legislature must determine how broad and comprehensive the object of the act shall be, and the particularity to be employed in the title defining it (*State* v. *Cumberland Club,* 136 Tenn. 84, 188 S. W. 583), but the question of whether the provisions of the act are congruous and germane must be determined by the court upon an inspection of its terms. *Frazier* v. *Railroad,* 88 Tenn. 138, 12 S. W. 537."

Expressing the same thought in somewhat different language, we said in *Texas Co.* v. *Fort,* 168 Tenn. 679 at page 683, 80 S. W. (2d) 658, at page 660: "The details of the plan were not required to be set forth in the title. . . . The title discloses the result aimed at; the method is for the body of the act. The 'subject' only is called for in the title, not the story; the purpose to do a certain thing, not just how it is to be done."

As well said by Mr. Justice McKINNEY, in *Mc-Mahan* v. *Felts,* 159 Tenn. 435, 438, 439, 19 S. W. (2d) 249, 250, directly applicable to the instant case:

"Manifestly the subject of the Act of 1921 was 'the creation of the Coopertown Special School District in Robertson County.' That subject would impress upon any reasonable mind the general nature and character of the legislation proposed. Whatever is of sufficient import to direct the mind to the subject of proposed legislation meets the object of the Constitution. *Memphis St. Railroad Co.* v. *Byrne,* 119 Tenn. [278], 307, 104 S. W. 460; *Truss* v. *State,* 81 Tenn. [311], 312.

"When the subject of a statute is sufficiently stated in the title, the manner, mode, means, or instrumentalities of its enforcement, administration, or accomplishment may be embraced in its body, though not recited or stated in the title. *Van Dyke* v. *Thompson,* 136 Tenn. [136], 143, 189 S. W. 62.

"Illustrative of this principle, we cite the following cases, where it was held that the subject of the act was sufficiently expressed in the title:

"*Cannon* v. *Mathes,* 55 Tenn. [504], 515. 'An act to fix the State tax on property.'

"*State* v. *McConnell,* 71 Tenn. 332, 'An act to create and establish the sixteenth judicial circuit in this State.'

"*State* v. *Yardley,* 95 Tenn. [546], 550, 32 S. W. 481,

482, 34 L. R. A. 656, 'An act to protect hotel, inn, and boarding-house keepers.'

"*Tennessee Coal, Iron & Railroad Co.* v. *Transportation Co.*, 128 Tenn. [277], 287, 160 S. W. 522, 525, 'An act to provide for the organization of corporations.'

"*State ex rel.* v. *Persica*, 130 Tenn. [48], 54, 168 S. W. 1056, 1058, 'An act to define and more effectually provide for the abatement of certain public nuisances.'

"Tested by these decisions, and many others of like import that could be cited, it is manifest that, had the caption of the Act of 1921 merely recited, 'An act creating a special school district in the 13th Civil District of Robertson County, Tennessee, known as the "Coopertown Special School District," ' it would have sufficiently recited the subject of the proposed legislation."

 Tested by the foregoing rules, it is obvious that the subject of the act now before us is sufficiently set forth in the caption. The members of the legislature and the inhabitants of the territory affected were advised by the title of a purpose to incorporate the town, with all that commonly goes with, is incidental to, such an incorporation. For the governmental details of election of officials, their powers and prerogatives, those concerned could look to the body of the act.

The specific complaints of the title which appear to be stressed on the brief of appellants are (1) that no reference is made in the caption to provisions in the act for the election and qualifications of the mayor and aldermen, and their succession in office; and (2) that the qualifications of other town officials and candidates for office prescribed by the act are not noted in the title. As before suggested, these are incidental details common to all municipal incorporation acts, provisions reasonably to be expected in such legislation.

After a review of our decisions, the learned chancellor announced his conclusion as follows:

"Applying the rules established by our Courts, as expressed in the foregoing citations and many others of like import, the Court is of opinion that Chapter 158, Private Acts 1945, is not subject to the criticism as contended for by complainants. The object and purpose of the Act is to incorporate the Town of Tracy City, and the provision of the Act as expressed in the body are germane to the purpose, and object of the Act. They are matters which are naturally and reasonably connected with the general subject and purpose of the Act expressed in the title, providing the means, manner and measures to facilitate the accomplishment of that purpose. The Court is of opinion that the Act is constitutional. *Van Dyke* v. *Thompson,* 136 Tenn. 136, 189 S. W. 62; *Town of Pulaski* v. *Ballentine,* 153 Tenn. 393, 284 S. W. 370. *Armstrong* v. *City of South Fulton,* 169 Tenn. 54, 82 S. W. (2d) 862."

In the bill it was charged that the companion ordinances above mentioned were indefinite and unreasonable in that the descriptive .term "stock" does not exclude domestic animals, such as cats and dogs. Here this theory appears to be abandoned, as it well might be for several sufficient reasons. In this Court the brief for appellants thus states their complaint:

"The wording of said ordinances is uncertain and indefinite in its meaning for the reason that Ordinance No. 1 provides in part:

" '. . . it shall be unlawful for any person, firm, partnership, association or corporation to wilfully permit Live Stock of any kind, character or description to run at large and unattended within the corporate limits . . .'

"Ordinance No. 2 provides in part:

" '. . . when he shall find any live stock of any kind, character or description, running at large and unattended, within the corporate limits . . .'

"From the above quotations from said Ordinances it will be seen that each ordinance has the word, 'unattended.' There is no way of knowing what this ordinance means by the word, 'unattended.' Could it mean that each animal had to have a person leading or holding said animal? Does it mean that one person might look after ten, twenty-five or fifty animals? Could it mean that each animal must have its attendant within two feet, fifty feet or a hundred yards of it? Complainants submit and insist that by the wording of these ordinances it is utterly impossible to know just what they mean by the word, 'unattended', and for that reason they submit that said Ordinances are unreasonable because by their wording they are uncertain and indefinite."

The well recognized necessity for definiteness in a statute, or an ordinance, is founded on the principle that one may not be lawfully punished for a violation of such a law which does not by its terms give notice of the nature of the offense intended to be proscribed. It must be certain and definite so that the average man reading it may understand whether or not he will incur the penalty provided thereby for his actions in the premises.

In our opinion in *Mayor and Aldermen of Jonesboro* v. *Kincheloe,* 148 Tenn. 688, 692, 693, 257 S. W. 418, 419, wherein an ordinance was challenged for indefiniteness, it was said: "It is true that, in so far as possible, ordinances should be 'certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them.' *Jones* v. *Nashville,* 109 Tenn. [550], 558, 72 S. W. [985], 986. There is no hard

and fast rule determining whether or not any given ordinance is void for indefiniteness. The rule of reason must be applied to every case as it arises. Wide latitude must be left to the city authorities in the framing of city ordinances intended to protect health or preserve peace and order in communities. It is a matter of impossibility always accurately to define the offense in such precise terms as to relieve the ordinance wholly from any charge of indefiniteness and deprive the enforcing officers of all discretionary latitude.'' Numerous illustrations are given of ordniances and statutes which, while conceded to be lacking in mathematical exactness, or absolute definiteness of terms, are sustained. Among these are our familiar statutes prohibiting ''disturbing'' public worship, ''disorderly'' conduct, ''reckless'' driving, ''cruelty'' to animals, ''overloading'' beasts of burdens. All such descriptive terms are flexible in meaning and application, the question of violation depending in each case upon its facts to be determined by the authorized authorities according to the rule of reason in the exercise of judicial discretion. Ordinances dealing with ''loitering'' and ''cleanliness'' and the like, are enforced upon this principle.

The ordinance before us falls in this class and is not subject to the objections made. Whether or not the ''attendants'' furnished are adequate for reasonable control of any one or more animals is a question of fact for determination on the facts of each case as it arises.

We find no error in the decree of the chancellor and it is affirmed.