Louisville & Nashville Railroad Co. *v.* Hammond Fowler, et al.

(*Nashville,* December Term, 1953.)

Opinion filed July 23, 1954.

Rehearing denied September 6, 1954.

WALKER, HOOKER, KEEBLE, DODSON & HARRIS, of Nashville, and PRIME OSBORN, of Louisville, Kentucky, for complainants.

ALFRED T. MACFARLAND, General Counsel, and HAROLD SELIGMAN, Assistant General Counsel, both of Nashville, for Railroad & Public Utilities Commission.

VAL SANFORD, of Nashville, for Brotherhood of Locomotive Engineers, Order of Railway Conductors, the Brotherhood of Railroad Firemen and Enginemen and the Brotherhood of Railroad Trainmen.

FRED ELLEDGE, JR., of Nashville, United States Attorney for the United States, intervening petitioner.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

The primary question presented by this appeal is whether or not the Chancellor was legally authorized by the statutes to review the action of the Railroad & Public Utilities Commission in the manner in which he proceeded.

If the Chancellor was not so authorized, then other questions raised become immaterial and unnecessary to be dealt with.

The Railroad Company, on August 11, 1952, filed its original petition with the Railroad & Public Utilities Commission for permission to discontinue passenger trains 198 and 199 operating between Bowling Green, Kentucky, and Memphis, Tennessee. Under Section 5398.1 of Williams' Code of Tennessee, and the Supple-

ment thereto, of 1950, and specifically under that part thereof, which provides as follows:

"Upon application by the carrier, the commission shall authorize the discontinuance of any passenger train when it shall be made to appear that for a period of 12 months or more, the direct operating costs of such train have exceeded the aggregate gross revenue therefrom by more than 30 per cent. * * *"

This petition was opposed by several civic organizations, cities, railroad brotherhoods, the Secretary of the Army, and by the legal assistant to the Commission. The matter was heard on November 10, 1952, by the Commission, and on December 9, 1952, the Commission issued its order denying the petition on the ground that the petitioner had failed to show that the direct operating costs had exceeded the aggregate gross revenue by more than 30 per cent.

The Commission further defined in its order the term "direct operating expense" as being "the necessary cost of the train in making its operating trip to and from its respective termini, or, in other words, the costs which were certain and inescapable as the result of the operation of a particular train during a specific period of time performing definite operations."

In application of the above definition the Commission held that (1) engine-house expenses, (2) maintenance of ways and structures, and (3) joint facility expenses do not constitute a part of the direct operating costs.

On February 2, 1953, the petitioner filed its petition for certiorari in the Chancery Court of Davidson County, the case was heard upon the transcript and on oral argument by the Chancellor, who, on December 4, 1953, filed his findings of fact in an opinion, in which he adopted the

Commission's definition of direct operating costs, but further held that the Commission was arbitrary and illegal in the allocation of the various expenses to be considered as direct operating costs. The Chancellor held that the maintenance of ways and joint facility expenses should properly have been included as direct operating costs, and that by the inclusion of such, the direct operating costs would exceed the aggregate revenue by more than 30 percent. From this decree of the Chancellor the Commission has prayed an appeal under Chapter 162, Public Acts of 1953, to this Court.

It is the insistence of appellant, first, that the Chancellor erred in making a determination as to what would constitute direct operating costs for the reason (a) that the scope of review of the action of the Commission by the Chancery Court is limited to the question of whether or not the Commission (1) has jurisdiction, and (2) acted arbitrarily, illegally or fraudulently, and (b) the determination of which expenses should properly be included in direct operating costs, is one properly for the Commission's decision, rather than the Court's own review.

It is, therefore, insisted that the Chancellor erred in holding that the petitioner had proved the direct operatings costs exceeded the aggregate gross revenue by more than 30 percent, and hence the Court was in error in finding that the Commission's order was arbitrary, illegal and void.

The Commission relies upon the case of *Hoover Motor Express Co.* v. *Railroad & Public Utilities Commission,* 195 Tenn. 593, 261 S. W. (2d) 233.

On the other hand, the insistence of the Railroad Company is thus stated in the brief:

"Section 29-(b) of the 1953 Act places upon the Chancellor the right and duty to determine the preponderance of the evidence. In view, however, of the opinion of this Court in *Hoover Motor Express Co., Inc.* v. *Railroad & Public Utilities Commission*, 195 Tenn. 593, 261 S. W.2d 233, a serious question might be raised as to the right or duty of the Chancellor to actually weigh and determine the preponderance of the evidence in the true sense. However, our review of the Commission's action was neither sought nor obtained on the theory that the Chancellor could or should weigh the evidence, but was sought and obtained on the contention that the Commission's action was illegal, unreasonable, arbitrary and contra to the undisputed record. It is our position, in this case, that it is clearly unnecessary to weigh the evidence or determine the preponderance of the evidence since it conclusively appears without contradiction in the record that the Commission acted illegally, *Louisville & Nashville RR. Co.* v. *Hammer*, 191 Tenn. 700, 236 S.W.2d 971, unreasonably and arbitrarily."

The petitioner's insistence is predicated on two things. First, that in the Hammer case, this Court said [191 Tenn. 700, 236 S. W. (2d) 976]:

"In conclusion we agree with the Chancellor's holding that the method of accounting used by the petitioner to determine operating costs and gross revenue was entirely proper in that it was recognized by other major railroad companies."

Secondly, that the only evidence as to what constituted direct operating costs was the testimony of the Railroad's statistician, Mr. Davis, who was not contradicted by any other witness.

We think that the Commission correctly answered the first of these two propositions in the following language:

"This Commission does not understand from that opinion that the Chancellor and Supreme Court approved every item listed in that proceeding as 'operating costs' to come within the legal meaning of that expression used in the Act of the Legislature heretofore referred to. In that case it was very obvious that the wages of the train crew, plus the fuel for the engine had cost the petitioner more than the 'aggregate gross revenue' over the thirty (30%) percent provided for in said Act, and the record having unquestionably revealed that fact, the Supreme Court did not go into the effort of defining everything that was embraced within the provision 'direct operating costs.' "

"In the instant proceeding the petitioner has included some items which it has designated as 'direct operating costs,' and which it admits were not recognized by other major railroad companies as proper 'direct operating costs,' but were included as a result of its own judgment. There are some items also included in the instant proceeding which were not included in the aforementioned opinion of the Court."

As to the second proposition above, that is, the insistence that because no one testified to the contrary, that the Commission was bound to accept the statement of the Railroad as to what they considered direct operating costs, the Commission pointed out that there is no explanation of why an item of $5,511.54 was included under the head of engine-house expenses as a direct operating cost. This item was eliminated.

The Commission then eliminated a part of the item called car-repair expense, and made this statement:

"The Commission is definitely of the opinion that the mere self-serving judgment figure of petitioner itself in allocation of car repair costs is not required to be accepted by the Commission without question."

With reference to maintenance of ways and structures item, after calling attention to the fact that it would take judicial knowledge of many fixed structures such as freight sheds, freight buildings, passenger depots, office buildings, etc., the Commission said:

"The Commission judicially knows that long and heavy freight trains use the rails and road bed, as well as other passenger trains of different weights, etc., and that no train could operate without a road-bed, but the Act does not provide for the 'costs' incident to the maintenance of the stationary objects as are needful in the general operation of a railroad, but (only those) which are the direct operating costs of operating a specific train for a given period."

The Commission then stated that it might assign other reasons for excluding this item, but it thought the reasons given were sufficient.

The joint facility expense arises out of the ownership and operation by a non-profit corporation which in turn is owned by all railroads using the joint terminal at Memphis. The witness said that all of this expense was charged to the Tennessee operation and none to the part of the operation in the State of Kentucky, and that this was simply an administrative policy of this railroad in setting up the accounting. When questioned as to what result would be reached if the expenses were set up on mileage basis as between the two states, the witness said that such an adjustment would show that about $8,800 was attributed to operation in Kentucky.

Furthermore, with reference to the operation of this joint terminal, the witness testified that no definite charge was made at the time for each train using the terminal, but that periodically the total expense of operation of the terminal corporation was figured out and prorated against each railroad on the basis of the total number of cars using the terminal during that period; but there was no showing as to the per car cost which may be attributed to a particular train or a particular trip. For these reasons the Commission eliminated the joint facility item.

Keeping in mind the statements in the Hoover Motor Express Co. case, supra, the crux of the matter before us is this. The Railroad & Public Utilities Commission is not a Court, but is a tribunal exercising such commingled legislative, executive and judicial functions that it cannot be made a Court. The determination of whether or not the Railroad Company shall be granted an order permitting it to discontinue these trains, is an administrative function of Government. In making such administrative determination, it is necessary that the Commission hear evidence, but it is not restricted by the technical common law and statutory rules of evidence. Thus it is that although the witness Davis was not contradicted, the Commission had the right to accept and rely on practices established by the railroads generally, or by the particular administrative determination of the subject railroad involved in this case, or it had a right to accept one and reject the other. The Commission having done the latter, that is, accepted one and rejected the other, cannot be said to be without material evidence to support its findings, and therefore, its action cannot be said to be arbitrary and void or illegal.

As said in the Hoover case [195 Tenn. 593, 261 S. W. (2d) 239]:

"The question whether there is any material evidence to support the finding and order of the Commission is, therefore, a matter of law for the Court upon review, and to ascertain that, whether there is any material evidence, is the limited purpose for which the evidence introduced before the Commission is admissible in the Court granting the writ of common law certiorari."

■ The solution to the ultimate administrative question before the Commission depended upon the evaluation to be put upon such evidence as was before it. The Commission simply held that since the burden of proof was on the Railroad and since the Commission did not accept the Railroad's so-called evidence on these items as showing that they were direct operating costs, it refused to grant the order. Now, on appeal, when the Chancellor undertook to put the opposite evaluation on the evidence he was, in effect, exercising an administrative function, or making an administrative determination, which in the Hoover case, was held to amount to an unconstitutional construction of Chapter 261, Public Acts of 1951, and we think that likewise, so of any such construction of Chapter 162, Public Acts of 1953.

In the Hoover case, after drawing the distinction between common law certiorari and certiorari in lieu of appeal, the Court quoted from *State ex rel. McMorrow* v. *Hunt,* 137 Tenn. 243, 250-251, 192 S. W. 931, 933, part of which is as follows:

" 'Hence it has been held that the supervisory jurisdiction of the court on a certiorari must be restricted to an examination into the external validity of the proceedings had in the lower court. It cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or the facts of the case.

The supervisory powers of the court should not be confounded with its appellate jurisdiction.' ''

We are, therefore, of opinion that the action of the Chancellor was erroneous and that his decree is reversed and the order of the Commission is reinstated and affirmed.

This makes it unnecessary to discuss any other matters in the brief of the Railroad Company or questions raised in the brief of the several brotherhoods of railway trainmen. A decree will be entered in accordance herewith, with costs against the Railroad Company.

On Petition to Rehear.

This petition to rehear filed by the Railroad Company raises no new questions but is re-argument of matters urged upon the Court at the original hearing, but the Court will answer it to the following extent.

The first error assigned is that this Court erroneously set out the reasons assigned by the Commission as a basis for rejecting joint facility or terminal expense as an item of direct cost and that this Court relied on said erroneous basis in affirming the action of the Commission.

The second assignment is that the Court erred in holding that there was no showing with respect to said joint facility or terminal expense as to the per car cost which may be attributed to a particular train or a particular trip and it is asserted that the record is wholly to the contrary.

■ The third assignment is that the Court erred in holding that one of the reasons the Commission rejected the joint facility or terminal expense as an item of direct cost was because there was no proration of this cost with respect to the Memphis terminal as between the Kentucky and Tennessee portions of the train run involved. In response to all of these assignments we first call attention

to the fact that this is an administrative matter to be determined by the Commission in the manner described on pages 10, 11 and 12 of the original opinion, and if there is any reasonable basis upon which the action of the Commission may be upheld, it will be upheld by this Court.

Secondly and pursuant to the above it is obvious at least to the author hereof that the Commission did not wholly accept all of the statements of the witness, Mr. Davis, but accepted some and rejected other parts of same both with respect to the particular item joint facility expense as well as the other questionable items, and held that the Railroad Company had not carried the burden of proof resting upon it.

This Court in reviewing the action of the Commission, beginning at the middle of page 7 of the opinion and running through page 9 of same, undertook to illustrate by reference to the opinion of the Commission and keeping in mind the evidence in the record that the action of the Commission was not arbitrary. In this connection we attempted to point out sketchily that the Commission eliminated as part of the direct operating costs a part of some of the claims made by the Railroad, for instance over $5,000 under the head of engine-house expense, $8,800 of the original claim made by the Railroad as the direct expense of operating the terminal at Memphis and all of the claim for expense of maintenance of ways and structures.

The Commission did not undertake to assign all of its reasons for its action nor did this Court make any such attempt. And particularly this Court did not make any such holding as is asserted in assignment 3.

With reference to the specific reason assigned by the Commission on page 20 of its opinion, record page 29, where the opinion states, ''and if it should be the fact

that the different railroads operating therein should reduce their cars in and out by the same amount there would be no saving to either company for it is not shown that the 'joint facility expenses' would be any less as a total,—therefore, the pro rata would be no less,'' it is apparent that this specific statement was made in the opinion of the Commission in response to the proposition injected into the evidence by the Railroad itself to the effect that the elimination of these two trains would effect a saving. It is clear that the Commission's statement about the matter is correct. Be that as it may, however, the Commission did not assign this as the sole reason and very clearly indicated that there may be other good reasons appearing from the record and this Court attempted to point out that the evidence does show other reasons.

E converso or on the other hand a fluctuation in a number of cars using the joint terminal by the other railroads with the number by the petitioner remaining static would work a relative increase or decrease in cost to the petitioner Railroad, which all brings us squarely face to face with the necessary conclusion that these terminal expenses are not direct operating costs of this Railroad in the operation of its trains because the cost necessarily depends upon how the other joint facility terminal owners conduct their operation.

The adjective ''direct'' is defined as ''of a character or relation like that of straightness of course. Specif.; (1) Free from intervening agencies or conditions; hence, characterized by immediateness of relation or action; not mediate; as direct perception.'' Funk & Wagnalls New Standard Dictionary, Original 1914 ed.

Hence our original conclusion that the action of the Commission was not illegal and arbitrary.

Petition to rehear is accordingly overruled.