**WEST TENNESSEE MOTOR EXPRESS, INC., Plaintiff-Appellee,**

v.

**TENNESSEE PUBLIC SERVICE COMMISSION, and Ned R. McWherter, d/b/a Volunteer Trucking Company, Defendants-Appellants.**

Supreme Court of Tennessee.
Oct. 15, 1974.

Eugene W. Ward, Nashville, for Tennessee Public Service Commission.

Walter Harwood, Nashville, for Ned R. McWherter, d/b/a Volunteer Trucking Co.

Buck & Baker, A. O. Buck, Robert L. Baker, Roland M. Lowell, Nashville, for plaintiff-appellee.

## OPINION

FONES, Chief Justice.

This case is before the Court on direct appeal from the Chancery Court of Davidson County, pursuant to T.C.A. § 65–230. Its origin was the filing on October 17, 1969, by Ned R. McWherter, doing business as Volunteer Trucking Company, hereinafter "Volunteer", of an application with the Tennessee Public Service Commission, seeking a certificate of convenience and necessity authorizing the transport of general commodities, with certain exceptions, between Nashville and all points in Weakley and Obin Counties, and corresponding interstate authority. McWherter's application was filed on the form provided by the Commission. Paragraph 9 reads as follows: A financial statement (not older than three months prior to this application) showing in detail applicant's current financial condition is attached as Exhibit "B". The application filed on October 17, 1969, provided only the following statement on Exhibit B— "Applicant will forward and file with the Commission a recent financial statement within the next few days."

No financial statement was provided between the application date and the date of the hearing.

The Commission appointed a Hearing Examiner and the proof adduced for and against the application consumed four days, June 9, 10 and 11, and August 5, 1971.

On the first day of the hearing, June 9, 1971, it developed that the only financial information that the applicant McWherter intended to furnish, in writing, was an unsigned sheet of paper containing the following words and figures:

"VOLUNTEER TRUCKING COMPANY
FINANCIAL STATEMENT

ASSETS (With which applicant will begin operations
CASH $20,000.00

LIABILITIES
Net Worth $20,000.00"

West Tennessee Motor Express, Inc., one of the contestants, hereinafter called "Petitioner", moved the Examiner to dismiss McWherter's application on the grounds that he had not complied with the mandatory requirements of T.C.A. § 65–1511, with respect to financial information.

The Examiner ruled, as follows, on said motion:

"Well, the Commission can rule on the motion. For the time being I think we should go ahead and continue. Anything you put on this sheet would be the same thing you put on the financial statement. You can cross-examine him orally as to his financial position. He says he has $20,000 to start a truck line."

McWherter testified, under oath, that he intended to lease the equipment to be used by Volunteer; that he would start the trucking business, if granted a certificate of convenience and necessity, with an initial capital of $20,000, and would add such capital as might be necessary. He testified that he had $90,000 cash in the bank, in his own name. He presented letters from three banks, stating their willingness to extend a line of credit to Volunteer, up to $100,000 each, secured only by McWherter's signature. The applicant, McWherter, further testified that, as an individual, he had no liabilities, that he paid his bills every Friday, and his testimony on both direct and cross-examination reflected that, in addition to $90,000 cash in the bank, he had interests in three other separate business enterprises, as follows: Owner of 100% of the stock of Volunteer Distributing Company, a corporation engaged in business as a distributor for Anheuser Busch; a 55% interest in a partnership business known as Weakley County Oil Company, and owner of 33⅓% of the stock in Hillview Nursing Home, Inc. He testified, on cross-examination, that he was on the Board of Directors of Peoples Bank of Dresden, owned stock in said bank, and was on the Board of Directors of the Weakley County Electric System, but owned no interest therein. McWherter was not asked, either on direct or cross-examination, to place a value on his stock in Volunteer Distributing Company, the nursing home corporation or the bank, nor his partnership interest in the oil company.

On February 14, 1972, petitioner and other protestants filed a written motion with the Commission, seeking dismissal of the application for failure to comply with the financial information requirements of T.C.A. § 65–1511.

On June 5, 1972, the Examiner filed his report with the Commission. His findings were favorable to the applicant, but he did not rule on petitioner's motion to dismiss for failure to provide financial information. He referred that question to the Commission with the following observations:

"Because of the number of applications made before the Commission and the statutory requirements as set forth in T.C.A. 65–1511, the Examiner feels that the questions raised are of transportation importance that should be ruled on by the Commission. Therefore, the Examiner is of the opinion that the Commission should consider the facts relating to the financial ability and condition of the Applicant and rule on the motion made by Protestants at the hearing and the written motion dated February 14, 1972 asking for dismissal."

Petitioner filed exceptions to the report. On October 30, 1972, the Public Service Commission, consisting of Commissioners Fowler and Atkins, Commissioner Pentecost having recused himself, granted Volunteer a certificate of convenience and necessity and overruled petitioner's motion to dismiss the application for failure to comply with T.C.A. § 65–1511, with respect to financial information.

The Commission, in ruling on petitioner's motion to dismiss, said:

"It has been the policy and practice of this Commission to treat the language of TCA 65–1511 as being directory and not mandatory. The Commission has not required strict compliance with the provisions of TCA 65–1511 as regards the filing of financial information simultane-

ously with the application as in many instances, the instant case not being an exception, the information filed with the application is out dated and unreliable by the time the matter is finally decided by the Commission. The instant application was filed on October 15, 1969 and continued on several occasions and for various reasons until it was finally heard initially on June 9 through 11, 1971, and further continued until August 5 and 6, 1971, at which time the protestants concluded their presentation of proof. Not one protestant has alleged that it was prejudiced by the lack of financial information on the application, nor has any protestant alleged that it was prejudiced by any thing less than complete and adequate testimony by the applicant, under oath, concerning the applicant's financial condition and ability to conduct the proposed operation. The applicant was cross-examined at the conclusion of his testimony and no party requested that he be further cross-examined at any subsequent date of the hearing. We feel that it has been shown clearly on this record the applicant's financial condition and we feel that the applicant is able financially to conduct the operation as proposed."

On petition for certiorari to the Chancery Court the Chancellor sustained the action of the Public Service Commission and this appeal resulted.

T.C.A. § 65–1511 provides, inter alia, as follows:

"*Application for permit or certificate— Contents—Advance fee.*—The commission shall adopt rules prescribing the manner and form in which motor carriers and/or contract haulers shall apply for certificates of convenience and necessity, and/or interstate permits and/or contract hauler's permits required hereby. Among other rules adopted, there shall be rules as follows: That every application shall be in writing and accompanied by the payment of fifty dollars ($50.00)

which shall be applied to the payment of the cost of the hearing thereon, and must contain, among other things (1) full information concerning the ownership and financial condition of the applicant, and designation and description of the equipment proposed to be used, (2) the complete route or routes with designation of highways over which applicant desires to operate, and the territory which the applicant desires to serve, (3) the proposed rates, schedule or schedules, or time cards of the applicant, and (4) in the case of the proposed contract haulers, a copy of the contract or contracts under which applicant proposes to operate."

All of petitioner's assignments of error raise the single issue, to wit: Are the words shall and must, in T.C.A. § 65–1511, to be interpreted as mandatory or directory?

It should be observed that applicant McWherter does not contend that Exhibit 1 introduced at the hearing, showing Volunteer Trucking Company as having $20,000 in assets, fulfils the statutory requirement of full financial information of the applicant.

In Louisville & Nashville Railroad Co. v. Hammer, 191 Tenn. 700, 236 S.W.2d 971 (1951), the railroad filed a petition before the Commission seeking authority to discontinue the operation of two passenger trains between Nashville and Copperhill, Tennessee. The legal basis for the relief sought was found in the following Section of Chapter 84 of the Public Acts of 1949:

"Upon application by the carrier, the Commission shall authorize the discontinuance of any passenger train when it shall be made to appear that for a period of twelve months or more, the direct operating costs of such train have exceeded the aggregate gross revenues therefrom by more than thirty per cent."

The railroad contended that its proof before the Commission showed conclusively

that its operating loss was within the requirement set forth in said Section; that the use of the word "shall" in the Section made it mandatory that the Commission grant the relief sought, without regard to other factors such as the availability of other services, etc.

The Commission denied the railroad the relief sought, but the Chancery Court reversed the Commission and was sustained on appeal to the Supreme Court. Mr. Chief Justice Neil quoted, with approval, the following from the opinion of Chancellor Wade:

"One of the questions presented to the Courts for determination is whether or not the above quoted section of the 1949 Act is mandatory or directory in so far as the duties of the Commission are concerned.

It is a general rule of law that the word 'shall' ordinarily is construed as being mandatory and not directory when used in constitutions or statutes. Rounds v. State, 171 Tenn. 511 [106 S.W.2d 212]."

However, the opinion points out that the legislative history of the Act in question reflects an effort to pass the Act, using in place of the word "shall", the phrase, "may, in its discretion". In its final form, the discretionary phrase was rejected and the word "shall" used. Obviously, with such legislative history, there could be no question that the Legislature intended, in that instance, a mandatory, rather than a directory, requirement.

■ The legislative history of T.C.A. § 65–1511 is devoid of explicit insight into the legislative intent. In determining the question in the instant case, the Court must view the entire procedure involved in obtaining a certificate of convenience and necessity, from application to final action of the Commission, as prescribed by the statutes, and seek to ascertain the legislative intent in the use of the words "shall" and "must", in T.C.A. § 65–1511.

After authorizing the Commission to adopt rules prescribing the manner and form of application for a certificate of convenience and necessity, the Legislature said, there shall be rules requiring a written application, a fee of $50.00, and that such application *must* contain four express areas of information, including full financial information of the applicant. The said four areas of information required by this Section of the Code dovetail with the factors that the Legislature has decreed shall be weighed by the Commission in issuing a certificate. Said factors appear in T.C.A. § 65–1507, and are as follows:

" . . . In determining whether or not a certificate of convenience and necessity should be issued, the commission shall give reasonable consideration to the transportation service being furnished by any railroad, street railroad or motor carrier on the route or in the territory in which the applicant proposes to operate, the service to be rendered and/or capable of being rendered by the applicant, the financial condition and character of the applicant, the character of the highways over which said applicant proposes to operate and the effect thereon and upon the traveling public using said highways, the public demand or need for the service proposed, the likelihood of the proposed service being permanent and continuous, the effect which such proposed transportation service may have upon other transportation service being rendered, and all other pertinent facts. . . ."

■ We believe it is clear that the Legislature intended as mandatory, rather than directory, the requirement that full financial information of the applicant should appear in writing as a part of the application.

■ Our scope of review in these cases is limited to a determination of whether or not the Commission has acted arbitrarily, or in excess of jurisdiction, or otherwise

unlawfully. We hold that it is unlawful for the Commission to treat as directory a mandatory statutory provision. Such holding was the result reached in Railroad v. Hammer, supra.

■ However, we do not agree with petitioner's contention that the erroneous action of the Commission requires our voiding the issuance of a certificate to applicant. The record herein reflects that the Commission has heretofore followed the policy and practice of treating the language of T.C.A. § 65–1511 as being directory only. Applicant relied upon said interpretation and was not confronted with a ruling that the statute is mandatory. Our ex post facto interpretation that the statute is mandaory renders the error of the Commission in ruling otherwise at a time when applicant would have had the opportunity to comply, prejudicial. Having found that applicant's petition was otherwise meritorious, with which we agree, applicant is entitled to be confronted with the mandatory rule and given an opportunity to supply such information.

We remand the case to the Chancery Court of Davidson County, with instructions to remand to the Public Service Commission for the issuance of an order by said Commission advising applicant Mc-Wherter that he has such time as the Commission may direct, in its discretion, to comply with T.C.A. § 65–1511, by completing Exhibit B of his application. Failure to comply with said order will result in denial of the certificate. If applicant complies, such additional proceedings shall be held by the Commission as are appropriate to determine the issue of applicant's financial condition in the light of the information provided, and decree accordingly.

The costs of this appeal are adjudged against the respondent McWherter.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.