IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2010 Session

## ROGER TAYLOR v. CLARKSVILLE MONTGOMERY COUNTY SCHOOL SYSTEM, et al.

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-MG-08-2    Hon. Laurence M. McMillan, Jr., Chancellor**

**No. M2009-02116-COA-R3-CV - Filed August 17, 2010**

In this action the School Board brought an action to dismiss plaintiff, a tenured teacher. Following a hearing, the Board of Education voted to suspend plaintiff without pay from November 27, 2007 to May 23, 2008, and required other sensitivity training and a probationary period. Plaintiff petitioned for a writ of certiorari to the Chancery Court, and the Chancellor affirmed the suspension on the grounds that plaintiff was guilty of conduct unbecoming a member of the teaching profession. On appeal we affirm the Trial Court's Judgment and remand with direction that the plaintiff be reinstated as a teacher with back pay from the time the appeal to Chancery Court ended.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Debra A. Wall, Clarksville, Tennessee, for the appellant.

Carol M. Joiner, Clarksville, Tennessee, for the appellees.

### OPINION

Petitioner, Roger Taylor was a tenured mathematics teacher, employed by respondent, Clarksville Montgomery County School System (CMCSS) during the school year 2007 -

2008. On January 8, 2008 the Director of Schools brought charges for dismissal against Taylor pursuant to the Tenured Teachers Act, Tenn. Code Ann. § 49-5-501 *et seq.* before the Board of Education.

The factual allegations of the Charges for Dismissal were that Mr. Taylor had been accused by a parent of one of his female students of kissing the student on the cheek during class. Taylor was suspended from his position with pay on November 14, 2007 pending an investigation of the charges. Later in November the suspension was changed to without pay status. As part of the investigation, several students who were interviewed confirmed the alleged kissing incident. The investigators were also told by several students of incidents of Mr. Taylor hugging students and telling them he loved them. Mr. Taylor was also accused of writing messages on students' homework or test papers such as "I love you" and "who ♥'s you?"

The Charges for Dismissal provided the Causes for Dismissal as follows:

"Conduct unbecoming to a member of the teaching profession (unprofessional conduct)" may consist of, but not be limited to, one (1) or more of the following: (A) Immorality; (B) Conviction of a felony or a crime involving moral turpitude; (C) Dishonesty, unreliability, continued willful failure or refusal to pay one's just and honest debts; (D) Disregard of the code of ethics of the Tennessee Education Association in such manner as to make one obnoxious as a member of the profession; or (E) Improper use of narcotics or intoxicants.

"Inefficiency" means being below the standards of efficiency maintained by others currently employed by the board for similar work, or habitually tardy, inaccurate or wanting in effective performance of duties;

"Insubordination" may consist of: (A) Refusal or continued failure to obey the school laws of Tennessee, or to comply with the rules and regulations of the board or to carry out specific assignments made by the board, the superintendent or the principal, each acting within its own jurisdiction, when the rules, regulations and assignments are reasonable and not discriminatory;

"Neglect of duty" means gross or repeated failure to perform duties and responsibilities which reasonably can be expected of one in such capacity or continued unexcused or unnecessary absence from duty;

The Board of Education voted on the matter on March 4, 2008, after a lengthy hearing in which Mr. Taylor, who was represented by counsel, participated. The Board voted to

suspend Mr. Taylor without pay from November 27, 2007 until May 23, 2008 and, in addition, required him to do the following:

1.  Immediately cease and desist with any hugs or kisses of pre-K through 12th grade students and discontinue the practice of telling the students "I love you" on homework papers or otherwise;

2.  Attend in-depth sensitivity training and counseling;

3.  Remain suspended for the remainder of the 2007-2008 school year;

4.  Execute a contract with the Board of Education detailing a three year probationary period; and

5.  The administration of CMCSS may reassign him as it deems fit.

On April, 3, 2008, Taylor filed a Petition for Writ of Certiorari in the Montgomery County Chancery Court against CMCSS and the members of the Board of Education pursuant to Tenn. Code Ann. § 49-5-513 (a) and (b). The Petition alleged the Board's decision was based on numerous errors, as detailed in the writ, and asked that the Board's decision against Taylor be reversed and that Taylor be reinstated in his teaching position and be awarded back pay with interest.

CMCSS answered on May 22, 2008, but the case was eventually set for hearing on April 29, 2009 "for good cause shown".

The Chancery Court conducted a hearing on April 29, 2009 and a Memorandum Opinion and Order was entered on September 9, 2009. The record does not reflect why the determination of the case was delayed by more than four months after the hearing. The Trial Court made a *de novo* review of the record from the hearing before the Board of Education and took testimony on the issue of whether the Board of Education acted in an arbitrary or capricious manner following the issuance of its decision pursuant to *Coomper v. Williamson County Board of Education*, 746 S. W. 2d 176, 179 (Tenn. 1987) and Tenn. Code Ann. § 49-5-513(g). The Court made the following findings:

1.  There is no material evidence to sustain the Board's finding of insubordination.

2.  Although petitioner's contention that "conduct unbecoming to a member of the teaching profession" is not a statutory ground for dismissal or suspension

under the Tenured Teachers Act, Tenn. Code Ann. § 49-5-501, is correct, the statute does list "unprofessional conduct" as a ground for discipline. The court was of the opinion that conduct that is "unbecoming to a member of the teaching profession" would also be "unprofessional". The court stated that petitioner's right to substantive due process would require the respondent to advise petitioner of the charges made against him and allow petitioner the opportunity to defend that charge. The court concluded that petitioners right to substantive due process was not violated when the Board used the term "conduct unbecoming to a member of the teaching profession rather than "unprofessional conduct". [1]

3.  The court found that there was material evidence to sustain the findings that Petitioner was guilty of the charge of "conduct unbecoming to a member of the teaching profession.

4.  As to petitioner's claims that his right to procedural due process was violated based on various evidentiary errors, the trial court found that the procedural irregularities raised by petitioner did not rise to the level of a violation of procedural due process.

5.  The trial court found no basis for awarding back pay as the petitioner had not been fully exonerated of the charges against him.

Based on the foregoing conclusions, the Trial Court affirmed the Board's finding that petitioner was guilty of "conduct unbecoming to a member of the teaching profession, but reversed the finding that Taylor was insubordinate.

Taylor has appealed to this Court, and raises these issues:

A.  Whether evidentiary and procedural irregularities in the hearing before the School Board were so numerous and egregious as a whole, as to deprive Mr. Taylor of due process?

B.  Whether the evidence substantiated a finding that Mr. Taylor's actions arose to a level of conduct unbecoming a teacher or unprofessional conduct?

C.  In the event that the Chancery Court's finding that Mr. Taylor's conduct was

---

[1] The Charges for Dismissal, in fact, included both terms -"conduct unbecoming to a member of the teaching profession" and "unprofessional conduct" in the first allegation.

unprofessional, should he receive any pay for the period of time that he was ordered to be reinstated by the board but not allowed to teach?

We review the decisions of a trial court sitting without a jury *de novo* upon the record. *In re Valentine,* 79 S.W.3d 539, 546 (Tenn. 2002). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. *Id.;* Tenn. R .App. P. 13(d). The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005), *Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993). This Court reviews credibility determinations made by the trial court with great deference. *Keaton v. Hancock County Bd. of Educ.,* 119 S.W.3d 218, 223 (Tenn. Ct. App. 2003).

This Court, in *Crosby v. Holt*, No. E2009-00712-COA-R3-CV, 2009 WL 5083464 at * 6 (Tenn. Ct. App. Dec. 28, 2009) recently discussed the standard of judicial review of an administrative hearing in connection with the termination of a teacher. The Court first noted that judicial review of constitutional and other such legal issues that arise during administrative proceedings is *de novo. Id*. at *6, (citing *Richardson v. Tenn. Bd. of Dentistry,* 913 S.W.2d 446, 458 (Tenn.1995)(trial court can take proof and determine constitutional issues)). Otherwise, judicial review of the administrative termination of a teacher is limited as stated in *Ripley v. Anderson County Bd. of Educ.,* 293 S.W.3d 154, 156 (Tenn. Ct. App. 2008).

Tennessee Code Annotated § 49-5-513 affords a tenured teacher whose employment has been terminated by a school board the right to chancery court review of the school board's decision. The chancery court's review, as contemplated by this statute, is a *de novo* review wherein the chancery court does not attach a presumption of correctness to the school board's findings of fact, nor is it confined to deciding whether the evidence preponderates in favor of the school board's determination. *Crosby* at * 6 (citing *Lee v. Franklin Special Sch. Dist. Bd. of Educ.,* 237 S.W.3d 322, 329 (Tenn. Ct. App.2007)). On the issue of whether the board acted arbitrarily, capriciously or illegally, the trial court may hear new evidence and must make independent findings on this issue. *Winkler v. Tipton County Bd. of Educ*. 63 S.W.3d 376, 381 (Tenn. Ct. App.2001). It is presumed that the actions of school boards are reasonable, and therefore not arbitrary and capricious, unless there is clear evidence to the contrary. *Crosby* at * 7 (citing *Childs v. Roane County Board of Educ.,* 929 S.W.2d 364, 365 (Tenn. Ct. App. 1996)). This Court, on appeal from the chancery court's findings, reviews the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

Here neither the Board nor the Chancery Court made specific findings of fact in support of the decision to suspend Mr. Taylor from his teaching position. Given the absence of findings of fact, this Court conducts its own review of the Board of Education hearing to determine whether the facts presented support the trial court's decision. *Ripley v. Anderson County Bd. of Educ.* 293 S.W.3d 154, 156 -157 (Tenn. Ct. App. 2008)(citing *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002).

The Trial Court found that Mr. Taylor's claims that his right to procedural due process was violated based on various evidentiary errors were without merit because the irregularities raised by Mr. Taylor did not rise to the level of a violation of procedural due process.

On appeal, Mr. Taylor provides a list of seventeen "egregious procedural and evidentiary problems that were allowed to occur repeatedly in the hearing" that prevented him from receiving a "meaningful due process hearing". However, appellant only addresses six of the listed errors in his brief. These issues are (1) failure to follow the CMCSS written policy when a parent makes a complaint; (2) admission of hearsay, through either oral testimony or written statements; (3) failure of the school system to specifically list Detective Julie Web on its witness list; (4) the substance of Detective Webb's testimony; (5) failure to allow appellant to introduce testimony regarding the child's grades; (6) the admission of the student witnesses' written statements through the principal's testimony.

First, appellant claims that as this matter arose from a complaint by the child's mother made to the assistant principal regarding the child's allegation that Taylor kissed her, the principal was obligated to provide Mr. Taylor with a written statement of the complaint and meet with him in an attempt to resolve the matter informally. The policy is set forth in the Memorandum Agreement between the Board of Education and the Clarksville-Montgomery County Education Association. Taylor, however, apparently chooses to ignore the provision of the Memorandum Agreement at Article XX, paragraph (E) that sets forth an exception to the procedures in paragraphs (A) and (B) in cases where Federal or State statutes require investigation. The uncontroverted testimony at the hearing established that Tennessee law and CMCSS policy require that the school system immediately report Mr. Taylor's alleged conduct of kissing a student to law enforcement and that the principal was not to advise him of the nature of the complaint until cleared to do so by law enforcement. Accordingly, the testimony at the hearing, clearly established that the principal and human resources director handled the parent's complaint in accordance with Tennessee law and the CMCSS policy in place. This issue is without merit.[2]

---

[2]This issue was never decided by the Board and it was improperly brought before the Trial Court. The Trial Court never specifically ruled on it, and it should not have been brought to this Court on appeal.

Taylor objects to the admission into evidence of the written statements of the four students who said they had witnessed Mr. Taylor kiss the child and/or had received "I love you" type notes on their quizzes from Mr. Taylor as hearsay. It is undisputed by the parties that the rules of evidence apply here. Tennessee Rules of Evidence, Tennessee Rules of Procedure or the common law rules of evidence do not necessarily apply before nonjudicial bodies unless the rules of that body so require. *L & N Railroad Co., v. Fowler*, 197 Tenn. 266, 271 S.W.2d 188 (1954). In *Crosby v. Holt*, 2009 WL 5083464 at * 8, a tenured teacher was charged with sexual misconduct with a student. The teacher challenged the introduction of hearsay evidence of classmates and another teacher at the board hearing. This Court set out the general rule that hearsay is admissible in an administrative hearing if (1) it is the type of material commonly relied upon by reasonably prudent persons in the conduct of their affairs and (2) it is corroborated and not the sole evidence of the act. *Id.* at *8. *Also see* Tenn. Code Ann. § 4-5-313(1). The *Crosby* Court stated that it was of the opinion that prudent members of a board of education charged with administering the activities of a school and the relationships between its teachers and students would necessarily rely on reports of students and teachers, especially as to matters where the participants in the challenged conduct have a strong incentive and ability to cover their incriminating tracks. The Court went on to write that "[w] agree that administrative hearings, no less than trials, involve a search for the truth, but we think this type of information, used advisedly, is a tool that can be utilized in the administrative search for the truth." Similarly, in this matter we hold that the Board members considering the charges against Mr. Taylor could rely on statements of students that were taken by Detective Webb in the course of the criminal investigation and authenticated by her at the hearing. Moreover, all but one of the facts set out in the written statements made by the students were corroborated by testimony presented at the hearing. Mr. Taylor also corroborated the girls' statements about the kiss with his claim that although he had not kissed the child, he had face to face contact with her when he wiped Coke from his face to her face. He also admitted that it was "absolutely" possible that his mouth could have touched the child's mouth. Based on the foregoing, it was appropriate that the students' written statements were admitted as evidence at the Board hearing.

Appellant also contends the written statements were improperly introduced by Ms. Houston because she did not generate the reports. However, Detective Webb, who took the statements from the students and was present when they wrote the statements did authenticate the statements when they were introduced into evidence. This issue is also without merit.

Appellant claims that Detective Webb should not have been permitted to testify at the hearing because she was not specifically listed on the school system's witness list. This issue is disingenuous as appellant had included Detective Webb on his own witness list and the school system had included the very common caveat that it reserved the right to call any witness identified on Mr. Taylor's witness list. This issue again is without merit.

Appellant also takes issue with the substance of Detective Webb's testimony and claims that she essentially branded him as a pedophile who was grooming his students for sexual abuse. He claims that he had no notice that Detective Webb would make such allegations as the charges brought against him make no reference to this issue, and that the lack of notice violates the Teacher Tenure Act, Tenn. Code Ann. § 49-5-511 (a)(4) that provides:

> When charges are made to the board of education against a teacher, charging the teacher with offenses that would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses that are charged, and shall be signed by the party or parties making the charges.

This contention is not support by the evidence presented at the hearing. First, Taylor was provided with a full set of charges as required by the Teacher Tenure Act. The charges include "conduct unbecoming a member fo the teaching profession (unprofessional conduct) and the factual allegation that Mr. Taylor kissed the child and that he engaged in other types of inappropriate conduct including writing "I love you" notes to students on quizzes, hugging students and telling students he loved them. These were the very actions that were discussed at the trial by Detective Webb when she discussed her findings of inappropriate behavior and possible "grooming" in her criminal investigation. Detective Webb never "branded" Mr. Taylor a pedophile and in fact, she clearly testified that this was not a sexual abuse case because there was no sexual abuse.

Taylor cites to *Turk v. Franklin Special School District*, 640 S. W. 2d 218 (Tenn. 1982) to support his contention that he should have been put on notice of the content of Detective Webb's testimony. The facts of *Turk* are quite different than the facts here and appellant's reliance on that case is misplaced.

Here, the Charges of Dismissal made against Taylor set forth specifically the charges made against him and the factual allegations that supported those charges. The factual allegations contained in the Charges of Dismissal were the kiss, the "I love you notes", hugs to students and telling students "I love you" or similar statements. The facts included in the Charges were the exact facts that was testified to by Detective Webb. This issue is without merit.

Taylor also complains that Detective Webb was permitted to testify to opinions she held as a mother rather than a law enforcement officer. This is not the case. At one point in her testimony Detective Webb stated that as a mother and a law enforcement officer she found Mr. Taylor's writing "I love you" or "who ♥ you" on school papers inappropriate. Appellant's counsel promptly objected to the detective testifying as a mother and the

detective, equally prompt, limited her testimony to that of a law enforcement officer.

Taylor also complains that Detective Webb was permitted to testify as to the forensic interview of the child that she observed, but appellant's counsel was not permitted to cross examine her on this issue. This charge is a distortion of what actually occurred at trial. Appellant's counsel did cross examine Detective Webb extensively on the forensic interview, however she based many of her questions on a confidential report, a Child Advocacy Report, that had been generated as part of the criminal child sexual abuse investigation that had never been disclosed to the CMCSS attorney. The law is clear that a Child Advocacy Report and its contents are confidential and not discoverable or admissible in a civil proceeding. Moreover, Tennessee law provides that the forensic interviews, and specifically the written summaries prepared by the examiner and the audio/video recordings of the interviews, conducted pursuant to the investigation of abuse alleged to have occurred are not discoverable. *See* Tenn. Code Ann. § 37-1-612(a) and Tenn. R. Crim. P. 16(a)(2). Counsel's use of this confidential document was objected to by the CMCSS attorney and counsel was instructed by the Board Chairman that " you can ask questions, . . . on what she [Webb] saw and observed, but do not use the report." Thus, it was not substance of her questions about the forensic interview that was disallowed by the Board Chairman, it was the use of the confidential report that was not permitted. This issue is without merit.

Taylor contends that it was error when he was not permitted to introduce evidence that the child that was kissed was failing Algebra I in November 2007, although the child was allowed to testify that she was not failing at the time. The Board did not allow either party to discuss any of the students' grades based on the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C.A. § 1232(g) *et seq.,* which prohibits schools from releasing students' educational records to third parties without the consent of the students' parents. A review of the transcript of counsel's cross-examination of the child shows that the child was questioned on cross-examination about whether she was failing the class and what her motivation was in telling her mother that Taylor had kissed her. She answered that she did not think she was failing but she was not sure because she was in the process of checking her grade, which was posted, when Taylor interrupted her with the kiss. She did state that she was not doing very well in class but that was not why she reported the kiss to her mother. She stated that her motivation was that she no longer felt comfortable in Taylor's class. Taylor was not prejudiced by the Board's ruling that the child's actual grades were not admissible. At this point, Taylor sought to impeach the child by introducing the school record of her grade in Algebra I. The Board Chairman's ruling that the grades were not admissible was not error.

The child's grades and the grades of the other four Algebra I students were admitted in evidence at the chancery court proceeding. Apparently, the parents of the students

consented to the release of the grades by CMCSS and the Trial Court placed them under seal. Thus, the Trial Court could consider the grades of the students during his *de novo* review of the Board proceedings and take them into consideration when examining the credibility of the witnesses. Thus, this issue is without merit.

The Charges of Dismissal brought against Taylor included the Causes for Dismissal and the definitions of the causes. The first cause listed was "Conduct unbecoming to a member of the teaching profession (unprofessional conduct)" which may consist of, but not be limited to, one (1) or more of the following: (A) Immorality; (B) Conviction of a felony or a crime involving moral turpitude; (C) Dishonesty, unreliability, continued willful failure or refusal to pay one's just and honest debts; (D) Disregard of the code of ethics of the Tennessee Education Association in such manner as to make one obnoxious as a member of the profession; or (E) Improper use of narcotics or intoxicants.

After the Board hearing Taylor was provided with a Notice of the Board's Decision which included notice that the Board had voted 5 - 2 that the evidence was sufficient to prove the allegation of Conduct unbecoming a member of the teaching profession by a preponderance of the evidence.

The Chancellor stated in his Memorandum Opinion that "[a]lthough petitioner's contention that "conduct unbecoming to a member of the teaching profession" is not a statutory ground for dismissal or suspension under the Tenured Teachers Act, Tenn. Code Ann. § 49-5-501 is correct, the statute does list "unprofessional conduct" as a ground for discipline. The Court was of the opinion that conduct that is "unbecoming to a member of the teaching profession" would also be "unprofessional". The Court stated that petitioner's right to substantive due process would require the respondent to advise petitioner of the charges made against him and allow petitioner the opportunity to defend that charge. The Court concluded that petitioner's right to substantive due process was not violated when the Board used the term "conduct unbecoming to a member of the teaching profession rather than "unprofessional conduct". The Court then found there was material evidence to sustain the findings that Taylor was guilty of the charge of "conduct unbecoming to a member of the teaching profession".

Taylor contends that the material evidence presented to the Board does not support the Trial Court's finding that Taylor's conduct was unprofessional under the Tenured Teachers Act and the ruling against Taylor should be reversed. He also points out that "conduct unbecoming a member of the teaching profession", one of the finding the Board listed as basis for Taylor's suspension is not a statutory ground for dismissal of a teacher. *See Morris v. Clarksville-Montgomery County Consol. Bd. of Educ.*, 867 S.W.2d 324, 329 (Tenn. App. 1993)(the statute . . . . does not include "conduct unbecoming a member of the

-10-

teaching profession).   However, Taylor does not suggest in his brief that the Trial Court's judgment be reversed on this point, but rather treats "unprofessional conduct" and "conduct unbecoming a member of the teaching profession" as one and the same.

At the conclusion of the hearing, the Board voted that Taylor was guilty of two of the charges, conduct unbecoming a member of the teaching profession/unprofessional conduct and insubordination, but not guilty of two of the charges, inefficiency and neglect of duty.

The Trial Court, after a *de novo* review of the evidence, determined that the material evidence did not support the finding that Taylor was guilty of insubordination but that he was guilty of the charge of conduct unbecoming a member of the teaching profession/unprofessional conduct.  The issue thus becomes whether the Court's finding that Taylor was guilty of unprofessional conduct/conduct unbecoming a member of the teaching profession is supported by material evidence.

We note that the Court is not limited to considering only the five factors listed in the statutory definition of "conduct unbecoming to a member of the teaching profession", (1) immorality; (2) conviction of a felony or a crime involving moral turpitude; (3) dishonesty, unreliability, continued willful failure or refusal to pay one's just and honest debts; (4) disregard of the code of ethics of the Tennessee Education Association in such manner as to make one obnoxious as a member of the profession; and (5) improper use of narcotics or intoxicants.  However, the factors listed in Tenn. Code Ann. § 49-5-501(3) are a good starting point for the analysis of whether the material evidence supports the Trial Court's finding of unprofessional conduct.  There was no evidence to support a finding that Taylor was immoral, was convicted of a felony, was dishonest or improperly used narcotics or intoxicants.  We conclude, however, that the preponderance of the evidence showed that Taylor's conduct was unprofessional in that he violated two provisions of the code of ethics of the Tennessee Educational Association.  The code of ethics provides:

> The educator strives to help each student realize his or her potential as a worthy and effective member of society.  The educator therefore works to stimulate the spirit of inquiry, the acquisition of knowledge and understanding, and the thoughtful formulation of worthy goals.

> In fulfillment of the obligation to the student, the educator -

> * * * *
> 4.  Shall make reasonable efforts to protect the student from conditions harmful to learning or to health and safety.

5. Shall not intentionally expose the student to embarrassment or disparagement.

The evidence established that Taylor approached the student in his classroom and, in front of at least three other students, touched his face to the student's face after declaring that he "loved his 6th period class."  This student and the three other students interpreted Taylor's action as a kiss and the student's testimony that she asked Taylor why he had kissed her was corroborated by the three girls who witnessed the kiss.  The student stated that she felt uncomfortable going back to Taylor's class after he had kissed her and that she had confided her feelings to her mother when she got home that day.

Taylor contends that the kiss or the wiping of coke from his face to the student's face in the classroom in front of other students was a solitary incident of poor judgment, but the evidence shows otherwise.  The student stated that she felt uncomfortable when Taylor wrote an "I love you" note on one of her quiz papers earlier in the semester.  Another student stated that she was "creeped out" by the notes Taylor wrote on her papers, by his telling her he loved her and his calling her beautiful.  Taylor even wrote "I love K." on his calculator and then projected the message for the entire class to observe.  Several other students also stated that they had received notes from Taylor, such as " who ♥ you?" and that Taylor had hugged them.   Taylor did not deny any of this testimony.

The foregoing conduct by Taylor is in violation of the teachers' code of ethics as it created an atmosphere that was harmful to the students' learning as they were both uncomfortable in Taylor's class.  Such violation of the code of ethics is defined as conduct unbecoming a member of the teaching profession and unprofessional conduct.  We conclude that the material evidence preponderates in favor of affirming the Trial Court's finding that Taylor was guilty of unprofessional conduct.

Taylor contends if this Court determines that his suspension was wrongful, he should receive his lost pay. Tenn. Code Ann. § 49-5-511 (a)(3) provides that a teacher may be suspended pending investigation or final disposition of a case before the board or on appeal but if the teacher is vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended.  Since we have determined that the evidence supports a finding of unprofessional conduct the suspension stands and this issue is moot.

Taylor further contends that if this Court upholds the suspension as ordered by the Board and affirmed by the Chancery Court, he should receive his wages from the date his suspension was to end, which would have been the beginning of the 2008-2009 school year, to the present.  Tenn. Code Ann. § 49-5-513 (a) and (e) are applicable here.  Section 49-5-513 (a) provides that [a] teacher under permanent tenure . . . who is dismissed or suspended by action of the board may petition for a writ of certiorari from the chancery court of the

county where the teacher is employed. Section 49-5-513 (e) provides that the filing of the petition shall suspend the order of the board pending a decision by the chancellor, but the teacher shall not be permitted to return to teaching pending final disposition of the appeal.

CMCSS contends that the provision of Tenn. Code Ann. § 49-5-513 (e) that "the teacher shall not be permitted to return to teaching pending final disposition of the appeal" applies, not only to an appeal of a board's decision to the chancery court but also to an appeal of a chancery court's decision to the Court of Appeals. We find no case law interpreting this section of the Code.

If the statutory language is clear and unambiguous, the court is to apply its plain meaning in its normal and accepted use without a forced interpretation that would limit or expand the statute's application. *Eastman Chem. Co. v. Johnson*, 151 S.W. 3d 503, 507 (Tenn. 2004). Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. *Id.* The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. *Id.* The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning. *Id.* (citing *First Nat'l Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007, 1009-10 (1948)).

With these rules in mind, a review of Tenn. Code Ann.§ 49-5-513 in its entirety is in order.

(a) A teacher under permanent tenure or limited tenure status who is dismissed or suspended by action of the board may petition for a writ of certiorari from the chancery court of the county where the teacher is employed.

(b) The petition shall be filed within thirty (30) days from the receipt by the teacher of notice of the decision of the board. The petition shall state briefly the issues involved in the cause, the substance of the order of the board, or the respects in which the petitioner claims the order of the board is erroneous, and praying for an accordant review. The petition shall be addressed to the presiding chancellor and shall name as defendants the members of the board and such other parties of record, if such, as were involved in the hearing before the board.

(c) The petitioner shall give bond for costs as in other chancery suits or oaths of paupers in lieu.

(d) Upon the filing of the petition, the clerk and master shall immediately send, by registered return receipt mail, to the chair of the board, a notice of the filing of the petition and a certified copy of the petition. The clerk shall also send a similar notice to the last known post office address of each other party named as defendant. In lieu of notice by registered mail, subpoena to answer may be served personally on each defendant, as in other chancery cases.

(e) The filing of the petition shall suspend the order of the board pending a decision by the chancellor, but the teacher shall not be permitted to return to teaching pending final disposition of the appeal.

(f) All defendants named in the petition desiring to make defense shall do so by answer, in which grounds of demurrer shall be incorporated, to the petition within thirty (30) days from the date of the filing of the petition, unless the time be extended by the court. Any other person who may be affected by the decision to be made by the court may, upon proper leave given, intervene and file an answer in the cause. Amendments may be granted as in other chancery procedures.

(g) The cause shall stand for trial and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involving state, county or municipal revenue. The review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at the hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.

(h) The chancellor shall reduce the chancellor's findings of fact and conclusions of law to writing and make them parts of the record.

(i) Any party dissatisfied with the decree of the court may appeal as provided by the Tennessee rules of appellate procedure, where the cause shall be heard on the transcript of the record from the chancery court.

Tenn. Code Ann § 49-5-513.

This statute clearly pertains only to an appeal to a chancery court of a board's decision to dismiss or suspend a tenured teacher and does not pertain to an appeal of a chancery court's decision to this Court. Subsection (a) provides the dismissed or suspended tenured teacher with the right to petition the chancery court with a writ of certiorari. Subsection (b) provides the time frame in which the tenured teacher can file the petition with the chancery

court and the required substance of that petition. Subsections (c) and (d) provide for notice and cost procedures in the chancery court. Subsection (e) states that the "filing of the petition shall suspend the order of the board pending a decision by the chancellor, but the teacher will not be permitted to return to teaching pending the disposition of the appeal. While the statute does not include the language "disposition of the appeal by the chancellor" it can only mean that based on the first clause of the sentence that does specifically refer to the decision by the chancellor. Subsection (f) provides for the time frame for filing an answer and permits intervention and amendments "as in other chancery procedures". Subsection (g) requires an expedited trial and provides the court's scope of review. Although this section does not specify its applicability to the chancery court proceeding, it can only refer to that proceeding as it references a trial, testimony and review of the board's actions, matters that can only apply to the chancery court which does not apply to the Court of Appeals. Subsection (h) refers specifically to the chancellor's duty to include his or her written findings of fact and conclusions of law in the record. Finally, subsection (i) is very clear that none of the above subsections apply to the Court of Appeals as the subsection provides that any party may appeal the chancery court's decision as provided by the Tennessee rules of appellate procedure. We conclude that section (e) would not prevent Taylor from returning to his teaching position while his appeal of the Chancellor's judgment was pending before this Court. We hold section (e) only applies to the time the petition for writ of certiorari was pending before the Chancery Court. Accordingly, Taylor was precluded from returning to his teaching position from the date he filed the petition for writ of certiorari, April 3, 2008, until the Chancellor's Final Judgment on September 9, 2009.

We are constrained to note the procedure followed in the Trial Court does not comport with the mandate of the statute. Under (g), the statute mandates that "the cause shall stand for trial and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involving state, county or municipal revenue". (Emphasis supplied). This case was appealed to the Chancery Court on April 3, 2008. A hearing on the case was held on April 29, 2009. A memorandum opinion and order was entered on September 29, 2009, some seventeen months after the case had been filed in Chancery Court. We can find no justifiable reason in this record for the Court and the parties failing to comply with the mandate of the General Assembly.

As Mr. Taylor was not vindicated by the final judgment, he is not due back pay for the period of time he remained suspended while the appeal to the Chancery Court was pending, pursuant to Tenn. Code Ann. § 49-5-511(a)(3). There is nothing in the Tennessee Rules of Appellate Procedure that would prevent Taylor from returning to a teaching position during the pendency of the appeal to this Court. Accordingly, Mr. Taylor should have been permitted to return to his position as of September 9, 2009, when the Chancellor made his final judgment, as long as he had met all the requirements made by the Board in its decision.

-15-

We find nothing in this record that would deny Taylor his back pay for the period of time after September 9, 2009 until he is returned to work.

The Judgment of the Trial Court's finding upholding the Board's discipline is affirmed, and the cause is remanded with the cost of the appeal assessed one-half to Roger Taylor, and one-half to the Clarksville Montgomery County School System.

_____
HERSCHEL PICKENS FRANKS, P.J.